**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| ANGELA B.[1], | : Case No. 3:21-cv-00150 |
| | : |
|      Plaintiff, | : Magistrate Judge Caroline H. Gentry |
| | : (by full consent of the parties) |
| vs. | : |
| | : |
| COMMISSIONER OF THE SOCIAL | : |
| SECURITY ADMINISTRATION, | : |
| | : |
|      Defendant. | : |

## DECISION AND ORDER

## I.    INTRODUCTION

This is the third time that Plaintiff's application for benefits has been before this

Court. Plaintiff filed her application for Supplemental Security Income (SSI) in May

2013. After her first hearing, the Administrative Law Judge, Gregory Kenyon, concluded

she was not eligible for benefits because she was not under a "disability" as defined in the

Social Security Act. (Doc. 7-2, PageID 42-52.) The Appeals Council denied Plaintiff's

request for review, and she filed a case before this Court. This Court remanded the matter

for further proceedings. (Doc. 7-9, PageID 400-11.)

On remand, the claim returned to ALJ Kenyon. After a second hearing, ALJ

Kenyon again concluded that Plaintiff was not eligible for benefits because she was not

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials.")

under a "disability" as defined in the Social Security Act.  (Doc. 7-8, PageID 317-33.)

After the Appeals Council denied Plaintiff's request for review, she filed another action

before this Court resulting in an Order vacating the Commissioner's non-disability

finding and remanding the case for further proceedings.  (Doc. 7-15, PageID 957-71.)

Plaintiff's claim was subsequently assigned to ALJ Heidi Southern on remand.

After a third hearing, ALJ Southern determined that Plaintiff was not eligible for benefits

as she was not under a "disability" as defined in the Social Security Act.  (Doc. 7-14,

PageID 875-93.)  After the Appeals Council denied Plaintiff's request for review,

Plaintiff timely commenced the instant action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award

of benefits, or in the alternative, for further proceedings.  The Commissioner asks the

Court to affirm the non-disability decision. This case is before the Court on Plaintiff's

Statement of Errors (Doc. 9), the Commissioner's Memorandum in Opposition (Doc. 13),

Plaintiff's Reply (Doc. 14), and the administrative record (Doc. 7).

## II.    BACKGROUND

Plaintiff was twenty-nine years old on the date the application was filed.

Accordingly, Plaintiff was considered a "younger person" for purposes of determining

her entitlement to disability benefits.  *See* 20 C.F.R. § 416.963(c).  Plaintiff has a

"limited" education.  *See* 20 C.F.R. § 416.964(b)(3).

The evidence in the administrative record is summarized in the ALJ's decision.

(Doc. 7-14, PageID 875-93), Plaintiff's Statement of Errors (Doc. 9), the Commissioner's

Memorandum in Opposition (Doc. 13), and Plaintiff's Reply (Doc. 14). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III.    STANDARD OF REVIEW

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); see 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

3

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even

4

if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV.  THE ALJ'S DECISION

### A.  Findings of Fact

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits.  In doing so, the ALJ considered each of the five sequential steps set forth in the regulations. *See* 20 C.F.R. § 416.920. The ALJ made the following findings of fact:

Step 1:     Plaintiff has not engaged in substantial gainful activity since May 13, 2013, the SSI application date.

Step 2:     She has the severe impairments of "Degenerative Disc Disease (DDD) of the Lumbar Spine; Hypertension; Migraine Headaches; History of Kidney Stones; Age Indeterminate Right Talus Fracture (discovered in 2016 with associated peroneal tendinitis); Obesity; Anxiety Disorder; Borderline Intellectual Functioning (BIF); and an Opioid Abuse Disorder."

Step 3:     She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:     Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work as defined in 20 CFR 416.967(a) subject to the following limitations: (1) would need to change positions every 30-minutes for 1-2 minutes at a time without leaving the work station or disrupting the flow of work; (2) frequent pushing/pulling with the bilateral upper extremities; (3) frequent fingering and handling with the bilateral upper extremities; (4)  frequent use of foot controls with the bilateral lower extremities; (5) occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; (6) never climb ladders, ropes, and scaffolds; (7) no exposure to unprotected heights or moving mechanical parts; (8) limited to unskilled, simple, routine, repetitive tasks; (9) unable to

5

perform at a production-rate pace (e.g., assembly line work) but able to perform goal-oriented work (e.g., office cleaner); (10) occasional contact with coworkers, supervisors, and the general public as part of the job duties; (11) occasional changes in an otherwise routine work setting; and (12) would require the use of a cane for ambulation."

She has no past relevant work.

Step 5:     Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

(Doc. 7-14, PageID 878-92.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 892.)

## B. Relevant Medical Opinions

### 1. Treating Physicians Dr. Schear and Dr. Shaw

Plaintiff's treating physicians, Dr. Scott Shaw and Dr. Martin Schear, rendered a joint opinion in June 2014. (Doc. 7-7, PageID 308.) In her Statement of Errors, Plaintiff refers to the joint opinion as being authored by Dr. Shaw. (Doc. 9, PageID 1243 n.2.) For ease of reference, the Court will use the same convention.

Dr. Shaw opined that Plaintiff's ability to lift and carry is affected by her physical impairments. Asked to identify medical findings that support this opinion, he stated that an X-ray and MRI identified degenerative disc [disease] and facet arthropathy, and that physical therapy had been ineffective in the past. (Doc. 7-7, PageID 308.) Asked for specific limitations, Dr. Shaw opined that Plaintiff could lift and carry ten pounds occasionally and five pounds frequently. (*Id.*, PageID 309.)

6

Dr. Shaw opined that Plaintiff's ability to stand and walk is affected by Plaintiff's physical impairments. He stated that an MRI of the lumbar spine dated January 15, 2014 supported this opinion. Dr. Shaw opined that Plaintiff could stand and walk for a total of two hours a day, and fifteen minutes at a time, during an eight-hour workday. (Doc. 7-7, PageID 309.)

Dr. Shaw opined that Plaintiff's ability to sit is affected by Plaintiff's physical impairments. He again relied on the MRI of the lumbar spine to support his opinion. Dr. Shaw opined that Plaintiff could sit for a total of two hours a day, and thirty minutes at a time, during an eight-hour workday. (Doc. 7-7, PageID 309.)

Based on the MRI of the lumbar spine, which showed degenerative disc [disease] and facet arthropathy, Dr. Shaw opined that Plaintiff could never climb, balance, stoop, crouch, kneel or crawl. Dr. Shaw also opined that Plaintiff's ability to reach, push and pull would be affected because those physical acts would cause increased pain. (Doc. 7-7, PageID 310.)

Dr. Shaw opined that Plaintiff should avoid heights, moving machinery, chemicals, temperature extremes, vibration, dust, fumes and humidity. Dr. Shaw based these limitations on Plaintiff's history of asthma, degenerative disc disease and facet arthropathy. He opined that these environmental situations would increase Plaintiff's asthma symptoms and back pain. (Doc. 7-7, PageID 311.)

Finally, Dr. Shaw opined that Plaintiff does not have the residual functional ability on a sustained basis to do sedentary or light work. (Doc. 7-7, PageID 311-12.)

The ALJ declined to give Dr. Shaw's opinion controlling weight and instead gave it minimal weight. (Doc. 7-14, PageID 889.) The ALJ explained her reasoning as follows:

> First, the undersigned recognizes the treating relationship between Drs. Shaw and Schear and [Plaintiff] (1F). Second, the opinions of Drs. Shaw and Schear, while offering valid diagnoses, offer limitations that are simply inconsistent and incomplete in relation to [Plaintiff's] treatment and history. Drs. Shaw and Schear's notation that the claimant's limitations are based upon "physical therapy ineffective in past" (8F/1) are: (1) based entirely upon [her] subjective reports to her physicians (see 6F/7, 10F/41); and (2) incomplete. Drs. Schear and Shaw neglect to mention that [she] was non-compliant with physical therapy as a possible reason for being "ineffective." (6F/4, 7, 9). Third, Drs. Shaw and Schear's exertional and postural limitations are inconsistent with testing done. Even if we disregard entirely the optimistic assessment of Dr. Swedberg[2] (though he still performed objective exertional and postural testing) (13F/2-11) and look at the far more restrictive limitations of Dr. Magnusen (2F/6), they still do not match the limitations of Drs. Shaw and Schear (6F)….The undersigned gives full benefit of the doubt to [Plaintiff], and lowers her to sedentary exertion, but must bow to the exertional, postural, and manipulative objective testing done by Dr. Magnusen. Drs. Shaw and Schear recommended environmental limitations of avoiding heights, moving machinery, chemicals, temperature extremes, vibration, dust, fumes, and humidity, based upon degenerative disc disease and "history of asthma" (8F/4). This too is inconsistent, as the record reflects a historical diagnosis of asthma, of which [Plaintiff] states in 2015 that she has had "no problems 2-3 yrs" (sic) (11F/67). The record simply does not support the degree of limitation imposed by Drs. Shaw and Schear. Drs. Shaw and Shear finally checked that [she] was incapable of sedentary or light exertional work (i.e. she is "disabled") (8F/4-5). Based upon both Drs. Shaw and Schear's limitations, lifting up to 10 pounds occasionally (8F/2) and that of Dr. Magnusen (2F/6), [Plaintiff] can perform at least sedentary work.

(Doc. 7-14, PageID 889).

---

[2] The assessment of Dr. Swedberg's opinion was at issue on the prior remand but is not at issue here.

## 2.  Consultative Examiner Dr. Magnusen

Dr. David Magnusen examined Plaintiff in July 2013. (Doc. 7-7, PageID 269-71.) He found that Plaintiff's cervical paraspinal muscles were tender to palpation and that the tenderness extended across her upper back and right shoulder. He found more significant tenderness over the lumbosacral paraspinals and sacroiliac area. Dr. Magnusen found limitation with spinal extension greater than flexion. He found that sacroiliac provocative maneuvers on the lefts side were markedly positive including the Faber and Gaenslen test. He found some restriction with range of motion of the left hip versus the right hip. Dr. Magnusen stated that the pain appeared to be referred from the lower back and sacroiliac area. He found that Plaintiff's muscle stretch reflexes were 2/4 in the bilateral upper and lower limbs. He also found mild weakness with thenar abduction on the left side versus the left side. (Doc. 7-7, PageID 270-71.)

Based on his examination, Dr. Magnusen reported a primary impression of chronic, axial lower back pain that was probably related to deterioration of the L4-5 disc. He also noted impressions of left sacroiliac pain (probably related to a recent pregnancy); chronic posterior neck pain which appears to be myofascial; right-sided headaches that may be related to a cyst; paresthesia and weakness in the left hand that may be related to carpal tunnel syndrome; and hypertension. (Doc. 7-7, PageID 271.)

Dr. Magnusen opined that Plaintiff could sit for six hours per day and for thirty minutes at a time; stand for two hours a day and for twenty minutes at a time; and walk for three hours a day and for thirty minutes at a time. He opined that Plaintiff could lift

9

twenty-five pounds occasionally and lift or carry up to ten pounds frequently. Dr.

Magnusen noted that she could climb stairs and ladders occasionally but that she should

avoid stooping and squatting. He determined she could reach in all directions but would

have some difficulty if reaching below her knees. Plaintiff would not be able to tolerate

vibration in the spine or left hand, nor repetitious activity with the left hand. Her handling

and fingering were, however, unaffected. He further opined that she could not tolerate

cold environments, but she could tolerate heat and humidity. (Doc. 7-7, PageID 271.)

> The ALJ assigned "some weight" to Dr. Magnusen's opinion, explaining:
>
> Dr. Magnusen examined and tested [Plaintiff], and based his opinion upon
> this objective evidence, the record, his expertise, and program knowledge
> (2F/1-4). However, Dr. Magnusen issued this opinion prior to [Plaintiff]
> having her January 2014 MRI, and thus, did not have the full evidence
> during this evaluation. Regardless, based on the complete record including
> this MRI (9F), and giving the claimant fully the benefit of the doubt, the
> undersigned has limited her to a completely sedentary exertional limitation.

(Doc. 7-14, PageID 886.)

## V.     LAW AND ANALYSIS

Plaintiff contends that the ALJ erred by giving minimal weight to Dr. Shaw's

opinion, and in her evaluation of Plaintiff's symptom severity. For the reasons below,

these arguments are not well-taken. The Court therefore affirms the ALJ's decision.

### A.     Applicable Law

Because Plaintiff's claim was filed before March 27, 2017, the opinion evidence

rules set forth in 20 C.F.R. § 416.927 apply. These regulations require ALJs to adhere to

certain standards when weighing medical opinions. First, the ALJ is required to consider

and evaluate every medical opinion in the record. *See* 20 C.F.R. § 416.927(b), (c).

Further, "greater deference is generally given to the opinions of treating physicians than

to those of non-treating physicians, commonly known as the treating physician rule."

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citations omitted).

The regulations define a "treating source" as a claimant's "own acceptable medical

source who provides . . . medical treatment or evaluation and who has . . . an ongoing

treatment relationship" with a claimant. 20 C.F.R. § 416.927(a)(2). The "treating

physician" rule is straightforward: "Treating-source opinions must be given 'controlling

weight' if two conditions are met: (1) the opinion 'is well-supported by medically

acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not

inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v.*

*Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R.

§ 416.927(c)(2)); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

The treating physician rule does not require ALJs to ignore inconsistencies

between a treating source's opinion and the evidence in the record. Instead, an ALJ can

"properly discount even a treating source opinion if the opinion is unsupported and

inconsistent with other substantial evidence in the record." *Herndon v. Comm'r of Soc.*

*Sec.*, Case No. 20-6094, 2021 U.S. App. LEXIS 15178, *15 (6th Cir. May 20, 2021).

If the treating physician's opinion is not controlling, "the ALJ, in determining how

much weight is appropriate, must consider a host of factors, including the length,

frequency, nature, and extent of the treatment relationship; the supportability and

11

consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec,* 378 F.3d 541, 544 (6th Cir. 2004)).

"Separate from the treating physician rule, but closely related, is the requirement that the ALJ 'always give good reasons' for the weight ascribed to a treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (citing 20 C.F.R. § 416.927(c)(2); other citation omitted)); *see Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Hargett*, 964 F.3d at 552 (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996))[3]. The goal is to make clear to any subsequent reviewer the weight given and the reasons for giving that weight. (*Id.*) Substantial evidence must support the reasons provided by the ALJ. (*Id.*)

## B. The ALJ Did Not Err When Analyzing Dr. Shaw's Opinion And Evaluating Plaintiff's Symptom Severity

The ALJ's decision to assign "minimal weight" to Dr. Shaw's opinion complies with the applicable legal framework and is supported by substantial evidence.

The ALJ's finding that Dr. Shaw's limitations were inconsistent with Plaintiff's treatment, history, and testing is supported by substantial evidence. For example, Dr. Magnusen identified less restrictive limitations after physically examining Plaintiff.

---

[3] SSR 96-2p has been rescinded. However, this rescission is effective only for claims filed on or after March 27, 2017. See SSR 96-2p, 2017 WL 3928298 at *1. Because Plaintiff filed his application for benefits prior to March 27, 2017, SSR 96-2p still applies in this case.

Although Dr. Magnusen's examination predated the 2014 MRI, which showed mild to moderate degenerative changes (Doc. 7-13, PageID 577), the ALJ accounted for the fact that Dr. Magnusen lacked this evidence by giving his opinion only some weight and limiting Plaintiff to sedentary work. The ALJ's analysis of the consistency factor is supported by substantial evidence and so must be affirmed by this Court.

The ALJ also did not err by finding that the alleged ineffectiveness of physical therapy did not support Dr. Shaw's opinions. Unlike the ALJ who issued the prior decisions, ALJ Southern offered an explanation for this conclusion that was supported by substantial evidence. Specifically, ALJ Southern explained that Dr. Shaw's finding regarding the ineffectiveness of physical therapy was based on Plaintiff's "subjective reports" and was "incomplete." (Doc. 7-14, PageID 888.) She further reasoned that the treating physicians ignored Plaintiff's non-compliance as a possible reason for being "ineffective." (*Id.*) This observation is supported by substantial evidence. Records reflect that Plaintiff was discharged from physical therapy due to "non-compliance on [her] part to abide by office policies." (Doc. 7-7, PageID 295.) Plaintiff was informed the provider would no longer provide services for this reason. (*Id.*) Dr. Shaw appears to attribute the ineffectiveness of physical therapy to the severity of Plaintiff's impairments, when this evidence suggests it was attributable to non-compliance. The ALJ did not err by discounting Dr. Shaw's opinion because it was based on a finding that is inconsistent with other evidence in the record.

Contrary to Plaintiff's argument, ALJ Southern did not run afoul of Social Security Ruling 16-3p when evaluating Plaintiff's symptom severity. *See* SSR 16-3p, 2017 WL 5180304, *9 (revised and republished Oct. 25, 2017) ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints"). The ALJ did not evaluate Plaintiff's non-compliance with physical therapy for the purpose of assessing Plaintiff's symptom severity. Instead, she discussed that issue when analyzing the consistency of Dr. Shaw's opinion. SSR 16-3p did not prevent the ALJ from conducting this analysis.

The ALJ also found the environmental restrictions offered by Dr. Shaw were inconsistent with Plaintiff's asthma because Plaintiff had not had any problems with asthma in two to three years. (Doc. 7-14, PageID 888-89.) This rationale was previously rejected by this Court because "asthma cannot be cured." (Doc. 7-15, PageID 968.) However, the undersigned finds that any error in rejecting Dr. Shaw's environmental restrictions is harmless. At Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including sorter, final assembler and inspector. (Doc. 7-14, PageID 892.) These jobs do not require exposure to any of the environmental factors that Dr. Shaw recommended be restricted. *See* DICOT, 521.687-086, 1991 WL 674226; DICOT 713.687-018, 1991 679271; DICOT 726.684-110, 1991 WL 679616. Thus, Plaintiff would not be precluded from

14

such work even if the ALJ had adopted the environmental restrictions offered by Plaintiff's treating physicians.

For these reasons, the ALJ's decision must be affirmed.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. 9) is OVERRULED;

2. The Court AFFIRMS the Commissioner's non-disability determination; and

3. The case is terminated on the Court's docket.

*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

15